UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

September 9, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:  *Janice M. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
     Civil No. 21-1715-BAH

Dear Counsel:

On July 9, 2021, Plaintiff Janice M. ("Plaintiff" or "Claimant") petitioned this Court to review the Social Security Administration's ("SSA" or "Commissioner" or "Defendant") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2021). I have considered the record in this case and the parties' cross-motions for summary judgment. ECF 11, 14, 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY both motions for summary judgment, GRANT Plaintiff's alternative motion for remand, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.    **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for a period of disability and Disability Insurance Benefits ("DIB") on March 29, 2018, and a Title XVI application for Supplemental Security Income ("SSI") benefits on June 19, 2018, alleging a disability onset of February 28, 2018.[1] Tr. 201–07, 217–22. Plaintiff's claims were denied initially and on reconsideration. Tr. 129–32, 135–36, 138–39, 140–41. On December 30, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 43–70. Following the hearing, on January 23, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame.

---

[1] The ALJ found that Plaintiff filed for DIB benefits on March 28, 2018, and SSI benefits on April 12, 2018. Tr. 22. Plaintiff's Application Summary for Disability Insurance Benefits states that the application date is March 29, 2018. Tr. 201. The Internet Application Summary states that the SSA "received [Plaintiff's] benefits application on March 28, 2018." Tr. 212. Plaintiff's Application Summary for Supplemental Security Income lists June 19, 2018, as Plaintiff's date of application for SSI benefits. Tr. 217. The Court will accept the dates on the application summaries (March 29, 2018, for DIB benefits and June 19, 2018, for SSI benefits) as correct.

[2] 42 U.S.C. §§ 301 et seq.

*Janice M. v. Kijakazi*
Civil No. 21-1715-BAH
September 9, 2022
Page 2

Tr. 19–36. The Appeals Council denied Plaintiff's request for review, Tr. 1–5, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process used to evaluate a claimant's disability determination. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)) (citation omitted).

Here, at step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since February 28, 2018. Tr. 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease, seasonal allergies, sleep apnea, and history of elbow surgeries." Tr. 25. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 28. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can push or pull as much as she can lift and/or carry. She can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally climb ladders, ropes, or scaffolds. She can have occasional exposure to fumes, odors, dusts, gases, and poor ventilation. She can frequently handle and frequently reach in all directions.

Tr. 29. The ALJ determined that Plaintiff is capable of performing past relevant work as a "Receptionist - (DOT 237.367-038)[3] sedentary, semiskilled, and SVP 4." Tr. 35. Therefore, the

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th

*Janice M. v. Kijakazi*
Civil No. 21-1715-BAH
September 9, 2022
Page 3

ALJ concluded that Plaintiff was not disabled. Tr. 36.

### III.  LEGAL STANDARD

A disability determination must be affirmed so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence. *Britt v. Saul*, 860 F. App'x. 256, 259 (4th Cir. 2021) (citing *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Id.* (quoting *Craig*, 76 F.3d at 589).

### IV.  ANALYSIS

Plaintiff raises two arguments on appeal, specifically that the ALJ: (1) failed to properly evaluate Plaintiff's subjective complaints; and (2) erroneously assessed Plaintiff's RFC. ECF 14-1, at 3–16. Defendant counters that the ALJ "applied the correct standard" and did not require Plaintiff to corroborated subjective symptoms with objective evidence. ECF 19-1, at 4–8. Defendant also avers that the ALJ properly performed the RFC analysis and correctly determined that Plaintiff can engage in "light exertional work." *Id.* at 8–9.

An ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017) (citing 20 C.F.R. 404.1529(b)–(c), 416.929(b)–(c)). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Id.* (citing 20 C.F.R. §§ 404.1529(b), 416.929(b)). "Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1529(c), 416.929(c). This "determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020).

Here, the ALJ agreed that Plaintiff's medically "determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 31. Neither party takes issue with this conclusion. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 31. Plaintiff argues that the ALJ erred at this second step by rejecting Plaintiff's subjective complaints of pain and placing undue emphasis on Plaintiff's activities of daily living and alleged participation in Pilates. ECF 19-1, at 8–11.

---

Cir. 2015).

*Janice M. v. Kijakazi*
Civil No. 21-1715-BAH
September 9, 2022
Page 4

"Under the governing legal standards, the ALJ had to consider all evidence, objective and subjective, in connection with his evaluation of the claimant's subjective complaints." *Dinah N. v. Kijakazi*, No. CV TJS-21-2038, 2022 WL 3139812, at *3 (D. Md. Aug. 5, 2022). "However, while a lack of corroborating objective evidence may not be the sole reason an ALJ discounts a claimant's complaints, it is generally appropriate for an ALJ to consider inconsistencies between a claimant's complaints and the available objective evidence." *Kenneth L. v. Kijakazi*, Civil No. SAG-20-624, 2021 WL 4198408, at *3 (D. Md. Sept. 15, 2021) (Gallagher, J.) (citing 20 C.F.R. § 416.929). Defendant contends that the ALJ appropriately considered these alleged inconsistencies and provided ample support for the ALJ's conclusion that objective evidence of Plaintiff's daily activities contradicted Plaintiff's subjective complaints. I cannot agree. The ALJ fails to provide adequate analysis at the second step of evaluating Plaintiff's subjective complaints, thus I am unable to find that the ALJ's determination is supported by substantial evidence and find that remand is required.

The ALJ began his analysis by summarizing Plaintiff's subjective symptoms as Plaintiff recounted them at the hearing. Tr. 30–31. The ALJ noted that Plaintiff claimed that the "pain in her back and legs worsened over the last year," that "she could only sit for 20 minutes and stand for five minutes," and that Plaintiff "has difficulty with prolonged standing and walking." Tr. 30. Plaintiff noted that the "pain is mostly in her lower back" and recounted that she was taking "Oxycodone every day" and "Gabapentin when the pain is severe." Tr. 30.

The ALJ then summarized Plaintiff's medical history by noting that Plaintiff has a "longstanding history of degenerative disc disease complicated by a remote history of elbow surgeries." Tr. 31. The bulk of the ALJ's summary was devoted to Plaintiff's elbow injuries, noting that by 2017, Plaintiff "endorsed complete relief of all symptoms and having no restrictions whatsoever with her arm." Tr. 31. As to Plaintiff's lower back, however, the ALJ told a different story. For example, the ALJ repeated that Plaintiff's continued recounting of pain including "'spasms' in the mid to low back that severely interfered with any physical activity," multiple trigger points over the paraspinals in the thoracolumbar region," "some low back pain," and "painful thoracolumbar range of motion." Tr. 31. The ALJ also confirmed that Plaintiff used approximately "30 to 35 Percocets over the last six weeks to help control pain" as well as "1800 mg of Gabapentin per day." Tr. 31. Despite Plaintiff's consistent reporting of debilitating pain, the ALJ determined, without citation to the record, that "the records show that [Plaintiff's] back pain was largely stable with pain medication." Tr. 33. The ALJ also concluded, again without citation, that "[d]uring the relevant period, the [Plaintiff's] treatment notes indicate the claimant was involved in Pilates." Tr. 33.[4] The ALJ also noted that "claimant reports that she maintains her personal/care/grooming, prepares light meals, drives, shops in stores, utilizes a computer, reads

---

[4] While Defendant offers a definition of Pilates in its brief, it is unclear whether this definition is shared by the ALJ. ECF 19-1, at 7 n.2. Moreover, the definition provided by Defendant is somewhat amorphous and provides only a vague notation that Pilates is an exercise "*typically* performed on a floor mat *or* with the use of specialized apparatus." *Id.* (emphasis added). The record here completely bare as to what type of Pilates program Plaintiff participated in or how rigorous it was.

daily, watches television, pays bills, counts change, handles a saving account, and uses a checkbook/money orders." Tr. 33.

The ALJ also rejected the opinions of Dr. Andrew V. Pangos, who determined "that [Plaintiff's] pain or symptoms would constantly interfere with attention and concentration needed to perform even simple work tasks." Tr. 34. This rejection was based largely on the fact that Dr. Pangos did not recommend surgery for Plaintiff and because "he also gave [Plaintiff] permission for do (sic) Pilates, which does not appear to be consistent with the limitations assessed." Tr. 34. The ALJ also noted that Plaintiff's reports of debilitating pain "are not entirely consistent with the [Plaintiff's] activities of daily living." Tr. 34.

It is certainly within the ALJ's purview to reject the opinion of a claimant's physician and to discount a claimant's subjective complaints of debilitating pain when the ALJ is faced with countervailing evidence that a claimant is performing activities of daily living that contradict Plaintiff's self-assessment. *See Eiker v. Astrue*, Civ. No. CBD-11-3584, 2013 WL 2149755, at *5 (D. Md. May 15, 2013) ("While the Court does not agree with every inference drawn by the ALJ, the analysis of Plaintiff's activities of daily living is supported by substantial evidence and the Court cannot endeavor to re-weigh the evidence."). However, "[a]n ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). Here, the ALJ did just that in rejecting Plaintiff's claims of debilitating pain largely due to the activities Plaintiff could allegedly perform without addressing Plaintiff's statements that these activities were severely limited by Plaintiff's conditions. *Arakas*, 983 F.3d at 100.

For example, the ALJ noted that Plaintiff could "drive," but ignored Plaintiff's testimony that Plaintiff cannot drive when she "is on medication." Tr. 49. Indeed, the ALJ appears to misstate the record in summarizing the types of activities Plaintiff can allegedly perform. For example, the ALJ's decision reflecting that Plaintiff reported that she can "drive," and "shop in stores." Tr. 34 (citing Tr. 290–93). The "Function Report" cited by the ALJ actually notes that "Plaintiff is unable to drive without someone else in the vehicle" and *used to* be able to "grocery shop by self" before the onset of her illness but cannot do so now. Tr. 290.

Moreover, it is error for an ALJ to reject a claimant's subjective complaints of debilitating pain solely because a claimant can perform the most basic of daily living activities:

> "When assessing the effect of claimants' activities of daily living on their physical RFC, ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy." *Eiker v. Astrue*, No. CIV.A. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013). "[A] claimant need not be constantly bedridden or completely incapacitated to be found disabled." *Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir.1980)). Individual or sporadic instances of activity do not necessarily demonstrate a person's ability to work on a sustained basis for eight hours per day. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a

>   chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Further, the ability to engage in some light activity does not necessarily translate into the ability to do substantial gainful activity. *See Morgan*, 142 F. App'x at 729 (finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper the ALJ's adverse credibility judgment against claimant who would load dishwasher and fold clothes, and went to Aruba on his honeymoon), report and recommendation adopted, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on plaintiff's ability to do housework "at her own pace with periods where no work was performed").

*Coreen T. v. Kijakazi*, Civ. No. CBD-19-3372, 2022 WL 252961, at *7 (D. Md. Jan. 26, 2022). Here, most of the activities accurately described by the ALJ are basic in nature, some requiring nothing more than a fleeting moment of attention (watching television, paying bills, counting change or using a checkbook) and none requiring more than minimal physical exertion. Absent additional explanation of these activities and a more detailed discussion of why their performance is inconsistent with Plaintiff's reports of debilitating pain, I cannot find that the ALJ's decision is supported by substantial evidence.

It is true that the ALJ also considered Plaintiff's purported "involvement in Pilates." ECF 19-1, at 7. However, the ALJ never explained what the Pilates program entailed, how frequently Plaintiff participated in it, and whether that participation was, in fact, inconsistent with Plaintiff's allegations of debilitating pain. Tr. 34. Absent further explanation of the "Pilates based exercise program," Tr. 496, it is similarly impossible for this Court to determine whether there is substantial evidence to support the ALJ's decision to completely reject all of Plaintiff's subjective complaints of debilitating pain.

It is also unclear from the record whether Plaintiff actually participated in a Pilates program at all. The ALJ cites to a 2018 letter from Dr. Panagos indicating that Plaintiff will "continue with a Pilates based exercise program." Tr. 34 (citing Tr. 496). This statement was also relied on by several state agency non-examining expert sources. Tr. 34 (citing Tr. 83, 109, 121). However, while there is mention of Plaintiff asking Dr. Panagos about "taking Pilates" in late July of 2018, Tr. 453, and reference to continuing a "Pilates based exercise program" in late September of 2018, Tr. 496, the record is bare as to the frequency and intensity of this activity. The ALJ declined to ask any questions about Pilates at the hearing in December of 2019.

It also bears noting that the ALJ's analysis fails to clearly differentiate between Plaintiff's elbow pain, which Plaintiff admitted was under control after two successful surgeries, Tr. 57, and

pain in Plaintiff's lower back pain, hips, and thighs, which Plaintiff described as debilitating. Tr. 55.  Specifically, the ALJ concludes that certain "opinions are not entirely consistent with the claimant [sic] activities of daily living," Tr. 34, but fails to explain whether those "opinions" addressed Plaintiff's elbow pain or back pain.  For these reasons, remand is required.

Because the case is being remanded on other grounds, I need not address Plaintiff's final argument that the ALJ failed to engage in an adequate RFC analysis.  Regardless, the ALJ is reminded that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019) (citing *Woods*, 888 F. 3d at 694).  "[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion."  *Id.*

Here the errors noted above similarly impact the required "function-by-function" consideration of physical and mental impairments that an ALJ is obligated to perform.  *Id.*  While the ALJ determined several functions the ALJ believes Plaintiff can perform, the ALJ's "opinion is sorely lacking in the analysis needed . . . to review meaningfully those conclusions." *Mascio*, 780 F.3d at 637.  In particular, although the ALJ concluded that Plaintiff can perform light work, the ALJ said nothing about Plaintiff's ability to perform the requirements of light work for a full workday. Tr. 35.  This was one of the precise errors found in *Mascio*.  *Id.*  Since I have determined that the ALJ erred in analyzing Plaintiff's subjective complaints of debilitating lower back pain, I will not speculate as to the results of a proper function-by-function review of Plaintiff's ability to perform the tasks required to substantiate a finding that Plaintiff is capable of performing past relevant work.  However, the ALJ is encouraged to explore this issue on remand.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 14, is DENIED, Defendant's motion for summary judgment, ECF 19, is DENIED, and Plaintiff's alternative motion for remand, ECF 14, is GRANTED.  Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis.  The case is REMANDED for further proceedings in accordance with this opinion.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge